IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

```
                              :
MELISSA DENT
                              :

    v.                        :   Civil Action No. DKC 16-2446

                              :

UNIVERSITY OF MARYLAND,
COLLEGE PARK                  :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this employment discrimination case are: (1) the motion for an emergency *pendente lite* hearing by Plaintiff Melissa Dent ("Plaintiff") (ECF No. 22); (2) the motion to dismiss filed by Defendant University of Maryland ("Defendant") (ECF No. 24); and (3) Defendant's motion to strike a surreply (ECF No. 31). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted, the motion to strike will be granted, and the motion for a *pendente lite* hearing will be denied.

**I.    Background**

**A.    Factual Background[1]**

Plaintiff is an African American female who worked for the Maryland Small Business Development Center ("SBDC"), a statewide

---

[1] Unless otherwise noted, the facts outlined here are set forth in the amended complaint and construed in the light most favorable to Plaintiff.

non-profit entity within the University of Maryland that operates a regional headquarters on Defendant's College Park campus. (ECF No. 10 ¶¶ 1, 13, 20). Plaintiff was employed as a business consultant by SBDC for four years until she was terminated in May 2016. (*Id.* ¶ 31). In her role at SBDC, Plaintiff assisted small businesses in a variety of ways, including counseling on revenue generation, helping with funding opportunities, developing strategic partnerships, and generating exposure for their businesses. (*Id.* ¶ 32). Until the spring of 2015, Plaintiff had received positive performance reviews, and she was awarded SBDC's Business Counseling State Star in September of 2014. (*Id.* ¶ 34).

On March 30, 2015, Plaintiff submitted a self-assessment for the previous rating period to SBDC management in which she was critical of her supervisor, Bret Kyle Bayliss. (*Id.* ¶ 33). Among the problems she identified were "challenges in communication between her and Mr. Bayliss, a lack of resources and resource allocation, and issues regarding employee morale." (*Id.*). Plaintiff did not mention any discrimination in her self-assessment.

Shortly after Plaintiff's self-assessment was submitted, Mr. Bayliss gave Plaintiff a "below expectations" performance review for the previous rating period. (*Id.* ¶ 34). When Mr. Bayliss met with Plaintiff to explain the poor evaluation, she

found him to be unreasonably hostile, "rais[ing] his voice, flail[ing] his arms, and knock[ing] items over on his desk, making [Plaintiff] extremely uncomfortable." (*Id.*). Plaintiff responded by emailing Mr. Bayliss's superiors, Renee Sprow and Lora Brown, to challenge his evaluation of her performance. (*Id.* ¶ 35). Specifically, she argued that Mr. Bayliss's poor evaluation was unfounded and that several reportable accomplishments on her scorecard had been altered to make it seem as though she was performing worse than she had been. (*Id.* ¶ 35). She later discovered that Mr. Bayliss had manipulated six of her performance milestones without notifying her, which ultimately adjusted her score. (*Id.* ¶ 37). Plaintiff explained this to Ms. Sprow, Ms. Brown, and Jeff Snider, a human resources representative, but there was no further action on the matter by SBDC management for several weeks. (*Id.* ¶¶ 37-38).

Plaintiff then filed a grievance against Mr. Bayliss regarding the matter. (*Id.* ¶ 39). Two Step 1 grievance meetings were held in May 2015 with Plaintiff, Mr. Bayliss, Ms. Sprow, Ms. Brown, Mr. Snider, and Patrick Laden, an attorney for the human resources department. (*Id.* ¶ 41). At one hearing, management agreed to adjust Plaintiff's performance evaluation to "Exceeds Expectations." (*Id.*). After Mr. Bayliss revised Plaintiff's performance review, however, he also asked Plaintiff to revise her evaluation of him in her self-assessment, a "*quid*

*pro quo*" arrangement that she refused. (*Id.* ¶¶ 44-45). In her grievance, Plaintiff also had sought to be moved out of Mr. Bayliss's supervision or to be permitted to bring representation to any meeting with Mr. Bayliss so that she would not be alone with him. Defendant refused these requests and instead referred Plaintiff and Mr. Bayliss to arbitration with the University Ombudsman. (*Id.* ¶¶ 41, 43). Other than amending her performance evaluation, Defendant denied Plaintiff's grievance. (*Id.* ¶¶ 46). Finding SBDC management's response inadequate, Plaintiff filed an internal whistleblower complaint with Denise Clark, the Associate Vice President of the division that oversees the SBDC, on June 4, 2015. (*Id.* ¶ 47-49).

Plaintiff remained under Mr. Bayliss's supervision, and the conflict between the two continued. In August, Mr. Bayliss denied a reimbursement request for training expenses that would normally have been reimbursed. (*Id.* ¶ 50). In September, Plaintiff was accused of calling Mr. Bayliss a liar in a staff meeting. (*Id.* ¶¶ 51-52). During her mid-September performance review, Plaintiff discovered once again that one of her employment milestones had been made "non-reportable" without notifying her and needed to be amended. (*Id.* ¶ 53). Mr. Bayliss later required staff to read a book and watch a video that Plaintiff suggests "insinuated [her] situation of a divorcee being fired for not trusting those with whom she

worked." (*Id.* ¶ 56). He also increased the frequency of performance reviews for the entire staff to monthly reviews, then ceased the monthly review process when Plaintiff went on medical leave. (*Id.* ¶ 60). In November, Defendant conducted a Step 2 hearing for Plaintiff's grievance, at which the grievance was dismissed without her having an opportunity to speak. (*Id.* ¶¶ 64-65). When she followed up with a new, revised grievance in which she again sought to be relieved from meeting with Mr. Bayliss alone, Defendant refused to consider it. (*Id.* ¶ 66).

On December 14, 2015, Defendant denied Plaintiff's internal whistleblower complaint. (*Id.* ¶ 70). When Plaintiff threatened to file a federal whistleblower complaint, Defendant scheduled a mandatory meeting with her, but would not allow her to bring an attorney. (*Id.* ¶¶ 71-73). Plaintiff refused to attend this meeting, and was issued a one-day suspension for insubordination. (*Id.* ¶ 74). On January 14, 2016, Plaintiff filed a federal whistleblower complaint with the Office of the Inspector General ("OIG") of the federal Small Business Administration ("SBA"). (ECF No. 10 ¶ 78). The OIG decided not to pursue an investigation into the matter. (*Id.* ¶ 96).

As this dispute unfolded, the stress of her work environment began to wear on Plaintiff. In the summer of 2015, she began to see a doctor for emotional distress and physical manifestations including pain, rashes, and hair loss. (*Id.* ¶

54).  After her suspension, Plaintiff's conditions were severe enough to warrant approved leave under the Family Medical Leave Act ("FMLA") from January 7 to January 19, 2016.  (*Id.* ¶ 75). After returning for a short period of time, Plaintiff was again placed on FMLA leave from February 9 until May 3.  (*Id.* ¶ 77).

On March 8, 2016, while Plaintiff was out on FMLA leave, Defendant sent her a "Last Chance Agreement" indicating that she would be reprimanded if she continued to refuse to meet with Mr. Bayliss alone.  (*Id.* ¶ 81).  Plaintiff then filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on March 28.  (*Id.* ¶ 26).  On March 31, the EEOC dismissed her complaint and issued a right to sue notice.  (*Id.* ¶ 27).  After Plaintiff returned on May 3, Mr. Bayliss sought to meet with her and she refused.  (*Id.* ¶¶ 85-86).  Citing violation of the Last Chance Agreement, Defendant terminated Plaintiff's employment on May 11.  (*Id.* ¶ 85).  Even after Plaintiff was terminated, Defendant's reports relating to her termination caused her to be denied certain unemployment benefits.  (*Id.* ¶ 97).

### B.  Procedural Background

Plaintiff filed this suit on June 29, 2016, against Defendant and SBDC, alleging race discrimination (Count I), sex discrimination (Count II), and retaliation (Count III), in violation of Title VII of the Civil Rights Act of 1964 ("Title

VII"), 42 U.S.C. § 2000e, *et seq*. (ECF No. 1). On November 14, SBDC and Defendant filed a motion to dismiss. (ECF No. 8). Plaintiff responded in opposition to the motion and filed an amended complaint, adding a claim for retaliation and wrongful termination (Count IV) in violation of the Whistleblower Protection Enhancement Act of 2012 ("WPEA"), an amendment to the Federal Whistleblower Protection Act ("WPA"), 5 U.S.C. § 2302, and the whistleblower provisions in Section 1553 of the American Recovery and Reinvestment Act of 2009 ("ARRA"), Pub.L.No. 111-5, § 1553(a) (2009). (ECF Nos. 10, 11). The court granted the motion to dismiss as to SBDC because it operates as an entity within the University. (ECF No. 17, at 4). On December 6, Plaintiff filed the pending motion for a *pendente lite* hearing. (ECF No. 22). Defendant responded (ECF No. 26), and Plaintiff replied (ECF No. 30). Defendant filed the instant motion to dismiss the amended complaint on December 16 (ECF No. 24), and Plaintiff responded on December 20 (ECF No. 27). After Defendant replied on December 22 (ECF No. 28), Plaintiff filed a separate "Memorandum of Law in Support of Plaintiff's Motion to Deny Defendant's Motion to Dismiss" on January 3, 2017 (ECF No. 29). Defendant then filed the instant motion to strike Plaintiff's January 3 filing as a surreply. (ECF No. 31). Plaintiff responded to the motion to strike (ECF No. 32), and Defendant replied (ECF No. 33).

## II.  Motion to Dismiss

### A.  Standard of Review

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006).  A complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).

At this stage, all well-pleaded allegations in the complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff.  *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)); *Brockington v. Boykins*, 637 F.3d 503, 505-06 (4th Cir. 2011).  In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989).  Legal

conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Generally, *pro se* pleadings are liberally construed and held to a less stringent standard than pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Liberal construction means that the court will read the pleadings to state a valid claim to the extent that it is possible to do so from the facts available; it does not mean that the court should rewrite the complaint to include claims never presented. *Barnett v. Hargett*, 174 F.3d 1128, 1132 (10th Cir. 1999). That is, even when *pro se* litigants are involved, the court cannot ignore a clear failure to allege

facts that support a viable claim. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990); *Forquer v. Schlee*, No. RDB–12–969, 2012 WL 6087491, at *3 (D.Md. Dec. 4, 2012) (citation and internal quotation marks omitted) ("[E]ven a *pro se* complaint must be dismissed if it does not allege a plausible claim for relief.").

**B. Analysis**

**1. Title VII Discrimination Claims**

Defendant first contends that Plaintiff has failed to state a proper claim for discrimination under Title VII in Counts I and II. It argues that Plaintiff has failed to allege facts indicating that any of the adverse actions taken against her were taken as a result of her race or sex. (ECF No. 24-1, at 9-14). Defendant notes that Plaintiff has not only failed to identify a comparator outside the protected class who was similarly situated and treated differently, but also that she has provided only speculative allegations that her treatment stemmed from a race- or sex-based animus. (*Id.*).

To succeed on a Title VII claim, a plaintiff must provide direct evidence of unlawful discrimination or, if direct evidence is lacking, follow the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

(1973).[2]  The elements of a *prima facie* case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class.  *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Court of Appeals of Md.*, 132 S.Ct. 1327 (2012).  At the motion to dismiss stage, however, a complaint need not establish a *prima facie* case of discrimination under the *McDonnell Douglas* framework.  *See Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510 (2002) (noting that "[t]he *prima facie* case . . . is an evidentiary standard, not a pleading requirement").  Rather, "to

---

[2] In her complaint, Plaintiff alleges both that Defendant took adverse employment actions against her and that it subjected her to a hostile work environment.  (ECF No. 10 ¶¶ 102-05, 108-11).  Claims for discrimination based on a hostile work environment are reviewed under a different standard.  To establish a *prima facie* case, Plaintiff must show that: (1) she was subjected to unwelcome conduct; (2) the unwelcome conduct was based on sex or race; (3) the conduct was sufficiently pervasive or severe to alter the conditions of employment and create a hostile work environment; and (4) some basis exists for imputing liability to the employer.  *See Smith v. First Union Nat'l Bank*, 202 F.3d 234, 241-42 (4th Cir. 2000).  These claims typically arise where the environment is discriminatory, but the Defendant fails to engage in other concrete adverse employment actions present here such as disciplinary proceedings or termination.  To the degree that Plaintiff alleges discrimination by way of a hostile work environment in addition to the adverse employment actions against her, she fails to describe how any of the hostile acts she pleads were based on her race or gender, as described in more detail below.  Plaintiff's hostile work environment discrimination claims will therefore be dismissed.

survive a motion to dismiss, the complaint must 'state a plausible claim for relief' that 'permits the court to infer more than the mere possibility of misconduct' based upon 'its judicial experience and common sense.'" *Coleman*, 626 F.3d at 190 (4th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). A plaintiff must allege a situation that is more than consistent with discrimination; it must "alone support a reasonable inference that the decisionmakers were motivated by [impermissible] bias." *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (citing *Iqbal*, 556 U.S. at 678). Indeed, in *McCleary-Evans*, the United States Court of Appeals for the Fourth Circuit upheld the district court's dismissal of an employment discrimination complaint because it left "open to speculation the cause for the defendant's decision," and discrimination was not plausible in light of another "obvious alternative explanation." *Id.*

The allegations in Plaintiff's complaint strongly indicate that Mr. Bayliss sought to make Plaintiff's life more difficult, but she has failed to plead facts indicating that his bias against her was based on her gender or race instead of other personal issues. Although Plaintiff repeatedly refers to Defendant's conduct as discriminatory, she makes only a few references to race or gender in her complaint. First, in the context of Mr. Bayliss's alleged *quid pro quo* offer to correct

12

her performance review if she amended her evaluation of him in the self-assessment, Plaintiff alleges that "[she] was the only business consultant that was an African American Female and retaliated against in this fashion by Mr. Bayliss." (ECF No. 10 ¶¶ 44-45).  Second, Plaintiff makes reference to another African American female, a "Ms. Smoots," who, according to Plaintiff, was similarly disliked by Mr. Bayliss and complained that her performance metrics had been lowered.  (*Id.* ¶¶ 48.b, 89).  Third, Plaintiff alleges that "Mr. Bayliss required [of all staff] the reading of a book and the watching of a video that insinuated the Plaintiff's situation of a divorcee being fired for not trusting those with whom she worked." (ECF No. 10 ¶ 56).[3]  Fourth, Plaintiff suggests that Mr. Bayliss "treated other African-American and Hispanic female employees under his control and supervision with hostility, while providing disproportionate raises and favor to others." (*Id.* ¶ 90).

---

[3] It is unclear how the book and video that Mr. Bayliss required all employees to watch was discriminatory.  Plaintiff further states that she did not read the book.  (ECF No. 10 ¶ 57).  As to any direct discrimination claim, Plaintiff does not indicate that the required viewing and reading constituted an adverse employment action nor that her refusal to read the book led to any adverse action.  To the degree that reading the book and watching the video are part of a hostile work environment claim, Plaintiff appears to be arguing that Defendant was hostile to her based on her marital status, not her race or sex, and these two requests would also be insufficient to constitute severe and pervasive conduct.

In contrast to these four references to race or sex, the narrative of her complaint offers an "obvious alternative explanation" for Mr. Bayliss's conduct. She begins her description of the facts with the poor review she gave Mr. Bayliss in her self-assessment on March 30, 2015. (*Id.* ¶ 33). Plaintiff makes no allegations that Mr. Bayliss discriminated against her or treated her with hostility prior to this bad review. In other words, the complaint alleges a dispute that began because of Plaintiff's criticism of Mr. Bayliss's "management of SBDC's Corridor Region," "challenges in communication between her and Mr. Bayliss, a lack of resources and resource allocation, and issues regarding employee morale." (*Id.*). Indeed, throughout her amended complaint and her internal whistleblower complaint, Plaintiff explains that "Mr. Bayliss's actions were in retaliation for [Plaintiff's] comments." (ECF Nos. 10 ¶ 45; 10-2, at 1).[4]

In light of this "obvious alternative explanation" on the face of Plaintiff's complaint, the few vague references to race and gender that Plaintiff makes "are simply too conclusory. Only speculation can fill the gaps in [her] complaint."

_____

[4] A court may, without converting a motion to dismiss into a motion for summary judgment, "consider documents attached to the complaint as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citation omitted).

*McCleary-Evans*, 780 F.3d at 586. The fact that Mr. Bayliss treated Plaintiff differently than other business consultants can be explained by their conflict over his management. Plaintiff's other allegations speak of discrimination in such broad strokes as to require extensive speculation to fill in the details.[5] In short, Plaintiff fails to allege plausibly that any difference in treatment between her and her peers was the result of prohibited discrimination as opposed to differences in job duties, personal conflict between her and Mr. Bayliss, or other non-prohibited reasons.

More broadly, Plaintiff appears to misunderstand the limitations of Title VII. Read as a whole, Plaintiff's complaint alleges that Mr. Bayliss unfairly treated her with hostility simply because she criticized him as a manager. In addition to allegations that Mr. Bayliss retaliated against her for her review of him, Plaintiff also complains of violations of her "right to a safe workplace," improper grievance procedures, the failure to follow internal University policy, and of Mr. Bayliss raising his voice, flailing his arms, knocking over items on his desk, and being a "bully." (ECF No. 10 ¶¶ 34, 42, 53, 60, 64, 65). Title VII does not protect against such

---

[5] Plaintiff cannot bring a claim for discrimination based on Mr. Bayliss or Defendant discriminating against Ms. Smoots. Plaintiff also makes clear in the complaint that Mr. Bayliss inherited Ms. Smoots' territory, which indicates that she was in a different position than Plaintiff.

issues.  In evaluating Title VII claims, the federal courts do "not sit as a kind of super-personnel department weighing the prudence of employment decisions made by [employers] charged with employment discrimination." *Amirmokri v. Abraham*, 437 F.Supp.2d 414, 424 (D.Md. 2006) (quoting *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)). Title VII "does not establish a general civility code for the American workplace." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). If Mr. Bayliss mistreated Plaintiff and Defendant took adverse employment actions against her because she wrote Mr. Bayliss a bad review, Title VII does not provide her any recourse.  Given that this explanation is the overriding thrust of her complaint, her discrimination claims in Counts I and II will be dismissed.

### 2.   Title VII Retaliation Claims

Count III of Plaintiff's complaint alleges retaliation in violation of Title VII.  Defendant moves to dismiss Count III because Plaintiff has failed to plead that any retaliatory acts were a result of her engaging in protected activity under the statute.  (ECF No. 24-1, at 18).  Even if an employer's underlying conduct was not discriminatory, retaliation can exist where the employer's response to a plaintiff's charge of discrimination "could well dissuade a reasonable worker from making or supporting a charge of discrimination [in the future]." *Burlington N. & Santa Fe Ry. Co v. White*, 548 U.S.

53, 67-68 (2006). To establish a prima facie case of retaliation, Plaintiff would have to show that: (1) she engaged in a protected activity; (2) in response, his employer acted adversely against him; and (3) the protected activity was causally connected to the adverse action. *Fordyce v. Prince George's Cty. Md.*, 43 F.Supp.3d 537, 547 (D.Md. 2014) (citing *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007)).

Protected activity includes "oppos[ing] any . . . unlawful employment practice [under Title VII] . . . or [making] a charge, testif[ying], assist[ing], or participat[ing] in any manner in [a Title VII] investigation, proceeding or hearing." 42 U.S.C. § 2000e-3(a). The Fourth Circuit has held "that an employee's complaint constitutes protected activity when the employer understood, or should have understood, that the plaintiff was opposing discriminatory conduct." *Burgess v. Bowen*, 466 F.App'x 272, 282 (4th Cir. 2012) (citing, *inter alia*, EEOC Compliance Manual § 8-II.B.2 (2006) ("[A] protest is protected opposition if the complaint would reasonably have been interpreted as opposition to employment discrimination.")). Determining whether an employer should have understood a complaint to allege discriminatory conduct "requires courts to consider whether the complaint could reasonably have led the employer to understand the nature of the complaint in the

context in which it was made." *Burgess*, 466 F.App'x at 282

(citing *Richardson v. Richland Cty. Sch. Dist. No. 1*, 52 F.App'x

615, 617 (4ᵗʰ Cir. 2002)).

There are no specific phrases or words that must be
included in a complaint to constitute protected activity. *See
Okoli v. City of Baltimore*, 648 F.3d 216, 224 (4ᵗʰ Cir. 2011)
(holding that a complaint alleging "harassment" was sufficient
for an employer to understand that the plaintiff was alleging
sexual harassment); *see also Broderick v. Donaldson*, 437 F.3d
1226, 1232 (D.C.Cir. 2006) ("While no 'magic words' are
required, the complaint must in some way allege unlawful
discrimination, not just frustrated ambition."); *Olson v. Lowe's
Home Ctrs. Inc.*, 130 F.App'x 380, 391 n.22 (11ᵗʰ Cir. 2005)
("There is no magic word requirement. That is, the employee
need not label the events 'sexual harassment' in order to place
an employer on notice of the offending behavior."). Title VII
does require, however, "that the employee at least have actually
opposed employment practices made unlawful *by Title VII*. That
is to say, the clause protects opposition neither to all
unlawful employment practices nor to practices the employee
simply thinks are somehow unfair." *McNair v. Computer Data
Systems, Inc.*, No. 98-1110, 1999 WL 30959, at *5 (4ᵗʰ Cir. Jan.
26, 1999) (unpublished table opinion); *see also Harris v. Md.
House of Correction*, 209 F.Supp.2d 565, 570 (D.Md. 2002).

"Complaints about a supervisor's 'rude' conduct, or other generalized complaints which do not alert the employer or person receiving the complaint 'that [the employee's] complaints were based on an allegation of discrimination,' are not protected activity." *Ruffner v. MD OMG EMP LLC*, No. WDQ-11-1880, 2012 WL 3542019 at *3 (D.Md. Aug. 13, 2012).

In Count III, Plaintiff alleges two types of protected activity: (1) "engaging in the University's grievance process regarding her unfair treatment," and (2) filing a complaint with the EEOC. (ECF No. 10 ¶ 116). Defendant argues first that Plaintiff's retaliation claim should be dismissed or limited because she failed to exhaust her administrative remedies. (ECF No. 24-1, at 14-15). "Before filing suit under Title VII, a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000); *Lewis v. City of Chicago*, 560 U.S. 205, 210 (2010). Here, Plaintiff's complaint states that her EEOC charge was filed on March 28, 2016, and that the EEOC rejected her claim and issued her a right to sue notice on March 31. (ECF No. 10 ¶¶ 26-27). Plaintiff does not allege that she filed any other EEOC complaints. Because the EEOC clearly did not have the opportunity to review any of Defendant's alleged conduct after March 28, Plaintiff has failed to exhaust her administrative remedies for any claim of retaliation in response

to the EEOC complaint or occurring after that date, including, most notably, her termination. *See Handon-Brown v. Washington Suburban Sanitary Comm'n*, No. RWT-13-3223, 2015 WL 1137728, at *1 n.3 (D.Md. Mar. 11, 2015) ("The EEOC Charge of Discrimination does not allege retaliatory termination since that event happened after its filing, nor did [the plaintiff] file an additional EEOC charge, or amend the charge to allege retaliatory termination.").

Plaintiff's argument that Defendant retaliated against her in response to the grievances she filed fails for the same reason that her discrimination claims do. Plaintiff's clear allegation in the complaint is that Mr. Bayliss retaliated against her for criticizing him as a manager in her self-assessment. Plaintiff attached both her internal whistleblower complaint and her EEOC complaint to her complaint in this case. (ECF Nos. 10-1, 10-2). Both documents similarly present this conflict over the evaluation as the source of Mr. Bayliss's unequal treatment, with little reference to her race or gender. (*See* ECF No. 10-1, at 8 ("The ongoing harassment and discriminatory events go back to a primary event[, Plaintiff's self-assessment,] on March 30, 2015."); 10-2, at 1 ("Bret Kyle Bayliss, illegally, fraudulently, manipulated my performance milestone results . . . in direct retribution for my highlighting 'workplace barriers' in my Self Assessment

Questionnaire. . . . I have evidence that this was retribution.")). In her amended complaint, the allegations about the content of her grievances are similarly focused on Mr. Bayliss's response to her criticism and lack any connection to Title VII-protected classes. (*See, e.g.*, ECF No. 10 ¶ 45 ("Mr. Bayliss' actions were in retaliation for Ms. Dent's comments.")).

As noted above, in order to plead a claim for retaliation under Title VII, the retaliatory conduct must be in response to protected activity: "oppos[ing] any . . . unlawful employment practice [under Title VII] . . . or [making] a charge, testif[ying], assist[ing], or participat[ing] in any manner in [a Title VII] investigation, proceeding or hearing." Activity protected by employment contracts, union agreements, or internal policies is inapplicable, despite the fact that the complaint process – reporting to a point of contact in the human resources department, filing a grievance, conducting a hearing, etc. – may proceed in similar ways. Title VII only protects against retaliation in the limited circumstances where an employer retaliates against an employee for opposing, or participating in proceedings related to, discrimination on the basis of race, color, religion, sex or national origin. Plaintiff's complaint makes clear that Mr. Bayliss's retaliation began with the non-protected issues she raised pertaining to his management

abilities and continued due to her grievance and whistleblower complaints based on the same conflict. "In offering this explanation as to the real reason for the employer's action, the plaintiff has undone [her] case. [Plaintiff] has tried to take a statute aimed at discrete forms of discrimination and turn it into a general whistleblower statute, which of course Title VII is not." *Lightner v. City of Wilmington, N.C.*, 545 F.3d 260, 264 (4th Cir. 2008)

### 3. Whistleblower Claims

Finally, Defendant argues that Plaintiff's whistleblower claims in Count IV should be dismissed. First, Defendant points out that the WPA, as amended by the WPEA, applies only to federal employees. (ECF No. 24-1, at 19). The WPA prohibits federal employers from taking a personnel action against "an employee in . . . a covered position in an agency" "because of any disclosure of information by an employee . . . which the employee . . . reasonably believes evidences any violation of any law, rule, or regulation." 5 U.S.C. § 2302(b)(8)(A)(i). A "covered position" is defined as "any position in the competitive service, . . . the Senior Executive Service, or . . . the excepted service," and an "agency" for purposes of the law is "an Executive agency." *Id.* § 2302(a)(2)(B-C). Defendant, an entity of a state university, clearly is not a federal agency under the statute. Plaintiff's allegation that SBDC relies on

federal grant funding from the SBA is insufficient to convert her job to a covered position. *See Williams v. Va., State Bd. of Elections*, No. 3:11CV863-HEH, 2012 WL 2878579, at *5 (E.D.Va. July 13, 2012) (finding no authority to support the proposition that a state entity qualifies as an employer under the WPA even in light of the fact that "a vast majority of the funds spent by the [state agency] are derived from federal grants"). Plaintiff's only argument in response is that a university receiving federal funds and considered a non-profit for federal tax purposes "should do better and be better in upholding Federal laws." (ECF No. 27, at 4). Plaintiff has thus failed to state a claim under the WPA.

Defendant also argues that Section 1553 of the ARRA is also inapplicable here. (ECF No. 24-1, at 21). Section 1553 applies only to whistleblowers who disclose misconduct in connection with funds distributed under the ARRA. *See* Pub. L. No. 111-5, § 1553(a) (2009); *Hosack v. Utopian Wireless Corp.*, No. DKC-11-0420, 2011 WL 1743297, at *6 (D.Md. May 6, 2011). Plaintiff has not alleged that the misconduct she disclosed was in any way related to ARRA funds. As Defendant points out, her complaint indicates that the federal funding used by SBDC comes from grants from the SBA, a permanent government entity with its own federal statute and regulations. (ECF No. 24-1, at 22).

Accordingly, Section 1553 is inapplicable here, and Plaintiff's claims in Count IV will be dismissed.

## III. Motion to Strike

Without seeking leave, Plaintiff has also filed a surreply to Defendant's motion to dismiss, labeled as a "Memorandum of Law in Support of Plaintiff's Motion to Deny Defendant's Motion to Dismiss the Amended Complaint and Defendant's Motion for Summary Judgment." (ECF No. 29). Defendant moved to strike the surreply. (ECF No. 31). Local Rule 105.2(a) states that "[u]nless otherwise ordered by the Court, surreply memoranda are not permitted to be filed." Plaintiff argues that she did not receive the letter from the clerk of the court about Defendant's motion to dismiss, and her right to reply to it, until December 23, after she had already responded and Defendant had already replied. (ECF No. 32 at 1-2). Because Defendant's reply had repeatedly noted Plaintiff's failure to respond to its legal arguments, Plaintiff appears to have construed the clerk's letter as a demand for further explanation. (*Id.*). Despite this confusion, briefing on the motion was complete at the time she filed this "Memorandum of Law," and the filing clearly constitutes a surreply.

A surreply may be permitted "when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *Khoury v. Meserve*, 268

F.Supp.2d 600, 605 (D.Md. 2003) (citation omitted). By contrast, "[a] motion for leave to file a surreply may be denied when the matter addressed in the reply is not new." *Marshall v. Capital View Mut. Homes*, No. RWT-12-3109, 2013 WL 3353752, at *3 (D.Md. July 2, 2013) (citation omitted). Defendant did not raise new arguments in its reply. Accordingly, Defendant's motion to strike will be granted.

## IV. Motion for *Pendente Lite* Hearing

Plaintiff also filed a motion for a *pendente lite* hearing. In her motion, Plaintiff asks the court to order Defendant to pay her a lump sum and ongoing monthly payments during the pending litigation. Because Plaintiff's amended complaint will be dismissed, the motion will be denied as moot. Even if the court were to hear the motion, Plaintiff has not shown that she is entitled to temporary relief.

## V. Conclusion

For the foregoing reasons, the motion to dismiss will be granted, the motion to strike will be granted, and the motion for a *pendente lite* hearing will be denied. A separate order will follow.

_____/s/_____

DEBORAH K. CHASANOW
United States District Judge
